## GULF COAST TRANSP. CO. v. STANDARD MILLING CO. et al.   (No. 355-3131.)

(Commission of Appeals of Texas, Section B. June 30, 1923.)

**1. Exceptions, bill of &#9758;8—Held to show exception taken to refusal of each charge separately, and not that all were presented and refused together as a whole.**

Where appellant tendered three separate charges, each on a separate sheet, signed by counsel and marked "Refused" by the trial judge, and separately indorsed and filed, and the refusal of the charges was shown by the bill of exceptions by reciting, "Appellant requested its special instruction No. 1 as follows [reciting the charge]," with similar recitation as to the second and third request, and stating that such charges were refused, "to which action the appellant in open court then and there excepted, all of which proceedings were had before the giving of the general charge, to which action of the court in refusing to give said special instructions of the appellant said appellant in open court excepted, and now tenders this as its bill of exceptions, and asks that the same be approved and ordered filed as a part of the record," followed by counsel's signature and judge's approval, sufficiently showed exception taken to refusal of each charge separately, and did not show that the charges were all presented and refused together.

**2. Trial &#9758;261—Not error to refuse charge containing palpable error in negation, instead of affirmative.**

If a requested instruction was palpably erroneous in containing the word "not," where an affirmative was intended, it was not the duty of the trial court to correct it, and its refusal of the instruction was not error.

**3. Carriers &#9758;137—Evidence held to entitle carrier to instruction as to damp condition of rice when threshed.**

Where, in an action for damage to a shipment of rice, the main issue was whether the injury was caused by the rice getting wet while being threshed or by the manner of handling during transportation, evidence *held* to entitle defendant carrier to special requested instruction that if damage shown was a result of a wet or damp condition of the rice when threshed, and of its subsequently being loaded in closed box cars, jury should find for defendant.

**4. Carriers &#9758;133—Evidence of similarity of conditions held to warrant evidence of condition of tenant's rice, in action against carrier for damage to landlord's portion.**

In an action against a carrier for. alleged damage to shipment of rice while in transit, such shipment being the landlord's portion, evidence of similarity of conditions *held* sufficient to permit testimony by witness as to his grading of the tenant's portion of the rice.

Appeal from Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the Standard Milling Company and others against the Gulf Coast Transportation Company and another. Judgment for plaintiff was affirmed by the Court of Civil Appeals (197 S. W. 874) on appeal by the named defendant, and a writ of error was granted such defendant because of an apparent conflict in decisions. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court for new trial.

H. E. Marshall and Stevens & Stevens, all of Houston, for appellant.

Andrews, Streetman, Burns & Logue and Baker, Botts, Parker & Garwood, all of Houston, for appellees.

McCLENDON, P. J. This was an action by the Standard Milling Company against the Gulf Coast Transportation Company and the Texas & New Orleans Railway Company for alleged damages in transit to a shipment containing 1,620 bags of rough rice from Cove, in Liberty county, to Houston, in Harris county, Tex. The rice was delivered to the Gulf Coast Transportation Company at Cove —794 bags on March 1st, and 826 bags on March 6th, 1911. It was transported from Cove to Clinton in barges of the transportation company across Galveston Bay, and was delivered by that company to the railway company on the 16th and 17th of March, 1911, at which point it was loaded into closed box cars of the railway company, transported to Houston, a distance of between 8 and 9 miles, and delivered to the milling company at about 11 a. m. on March 18, 1911. The trial was to a jury upon a general charge, and resulted in a verdict and judgment for the plaintiff for $1,795.65, the full amount sued for, with interest, against the transportation company, and in a judgment upon a directed verdict in favor of the railway company. The transportation company alone appealed, and the judgment of the trial court was affirmed by the Court of Civil Appeals. 197 S. W. 874.

The two important questions in the case involve the correctness of the trial court's action in refusing three special charges requested by the transportation company, and in excluding certain testimony. The Court of Civil Appeals has given a very full statement of the case, and has quoted quite extensively from the testimony. We do not think it necessary, in presenting the several assignments of error relied upon, to do more than give a brief outline of the record, in so far as it bears on the assignments.

The rice in question was raised during the year 1910 upon two tracts of land owned or controlled by an irrigation company. One of these tracts was cultivated by Gillard and. Haywood and the other by one Williams, tenants of that company. One half of the ·

crop thus raised belonged to the tenants, and the other half to the irrigation company as land and water rights' rentals. The rice was threshed in September and October, 1910, and the evidence shows without controversy that during the threshing season the weather was rainy and unusually bad for threshing. Some of the rice was concededly wet or damp when threshed; and the evidence would support a finding that it was all more or less in that condition, although upon this issue there was conflict in the testimony. At the time of threshing, the crop was divided between the landlord and the tenants, the former taking one sack and the latter another alternately. All of the rice as threshed was put in a warehouse at Cove belonging to the irrigation company, and was held there until the spring of 1911. The rice involved in this suit was the portion of the crop belonging to the landlord, and was purchased by the milling company shortly before being transported to Houston. At the time of its purchase, an agent of the milling company went to Cove and inspected it. His testimony was to the effect that it was then in good condition. We quote from the opinion of the Court of Civil Appeals:

"In a general way, the milling company's proof tended to show that when the rice in controversy was delivered to the transportation company for shipment, it was sound and in good condition; that the barges on which it was shipped laid at anchor for a week or two, without caretakers; that the canvas tarpaulins used by the transportation company to protect the rice were old and imperfect; that the rice was loaded on the decks of the barges, without other covering than tarpaulins, and was raised above the deck only by a framework of one-inch boards laid across 2x4's; that in towing the barges across Galveston bay, the captain of the tug tied the barges so that one would throw spray on the other; that the barges were so loaded that the decks were only 12 or 16 inches above the water line, and that the barges were loaded so deeply that ordinary waves would break against the sides, and throw spray over the deck load. It further attempted to show that, on arrival of the rice at destination, it had been severely and recently damaged by water. The undisputed proof showed that the railroad company loaded the rice into waterproof cars at Clinton, where it was delivered by the transportation company, and handled it promptly to destination."

Upon delivery of the rice to plaintiff at Houston, it was inspected by another of plaintiff's employees, whose testimony showed a marked deterioration in grade from that testified to by the agent who inspected it at Cove.

The outstanding, if not the only, real issue of fact in the case was whether this deterioration in grade, if in fact it existed, was due to the manner in which the rice was handled by the transportation company or to natural causes consequent upon the rice's having been harvested while wet or damp.

The trial court, in its main charge to the jury, gave the following instructions upon the measure of damages:

"4. If you find from the evidence that the said shipment of rice was not in as good a condition when it was delivered by the said defendant Gulf Coast Transportation Company to the defendant, Texas & New Orleans Railroad Company, as it was when it was received by the said Gulf Coast Transportation Company from the plaintiff, you will (unless you find for the defendant under the succeeding paragraph of this charge) find for the plaintiff, and assess its damages as directed in the sixth paragraph of this charge.

"5. If you believe from the evidence that the said shipment of rice was in as good a condition when it was so delivered to the Texas & New Orleans Railroad Company as it was when it was received from the plaintiff by the Gulf Coast Transportation Company, or, if you believe from the evidence that it was not in as good a condition when so delivered as it was when so received, but should further believe from the evidence that said rice became wet or damp before it was so delivered to the defendant, Gulf Coast Transportation Company, and that the change, if any, in the condition of said rice was due to its becoming stack burned, heated, or musty on account of becoming wet (if you find it did so become wet) before being delivered to the defendant, Gulf Coast Transportation Company, you will, in either of said events, find for the defendant, Gulf Coast Transportation Company.

"6. If you find for the plaintiff you will assess its damages at a sum equal to the difference between the market value in Houston, Tex., of said shipment of rice at the time of its delivery to plaintiff in its then condition, and what would have been its market value at the same time and place had it been delivered to plaintiff in Houston in the condition it was in when originally received by the defendant, Gulf Coast Transportation Company, for the purpose of transportation, as hereinbefore mentioned, together with interest at the rate of 6 per cent. per annum from the 18th day of March, 1911."

[1] The transportation company tendered three special charges, each of which was upon a separate sheet of paper, signed by counsel, and marked "Refused" by the trial judge, and separately indorsed and filed. The action of the trial court in refusing these special charges is shown by a bill of exceptions which we here copy:

"Be it remembered that on the trial of the above styled and numbered cause, after the court had submitted to the attorneys of the respective parties for their inspection its general charge, and before the same was read to the jury, and before the argument was begun in said cause, the defendant, Gulf Coast Transportation Company, requested the court to give its special charge No. 1, as follows, to wit:

" 'If you believe from the evidence that the shipment of rice was not in as good a condition when it was delivered to the Gulf Coast Transportation Company by the plaintiff as it was when it was received by the plaintiff from the

Texas & New Orleans Railroad Company at Houston, and that the difference in the condition of the same, or damage to the same, arose by reason of the fact that the rice had been threshed when it was wet, you will find for the defendant, Gulf Coast Transportation Company.'

"And also requested the court to give its special instruction No. 2, as follows, to wit:

" 'If you find from the evidence that the rice was in a more damaged condition at the time it was delivered at Houston than it was when delivered by the plaintiff to' the defendant, Gulf Coast Transportation Company, but that said damage arose from deterioration on account of the said rice having become wet or damp before it was delivered to said company, then you will find for the defendant, Gulf Coast Transportation Company.'

"And also its special instruction No. 3, as follows, to wit:

" 'If you find from the evidence that .the rice, at the time it was delivered to the plaintiff at Houston, was not in as good a condition as when it was delivered to the Gulf Coast Transportation Company, but that on account of said rice having been wet or damp at the time it was threshed, and the subsequent placing of the same in the closed box cars of the Texas & New Orleans Railroad at Clinton, caused the previous damage to said rice to develop, you will find for the defendant, Gulf Coast Transportation Company.'

"Which aforesaid requested special instructions of the defendant, Gulf Coast Transportation Company, Nos. 1, 2, and 3, were refused by the court, to which action of the court the defendant, Gulf Coast Transportation Company, in open court then and there excepted, all of which proceedings were had before the giving of the court's general charge to the jury, to which action of the court in refusing to give said special instructions of the defendant, Gulf Coast Transportation Company, said defendant in open court excepted and here now tenders this as its bill of exception and asks that the same be approved and ordered filed as a part of the record in said cause. [Signed by counsel.]

"The foregoing bill of exception examined by me and the same is accordingly approved and ordered filed as a part of the record in said cause. [Signed by the trial judge.]"

The Court of Civil Appeals declined to consider the assignments of error questioning the trial court's action in refusing these special charges, upon the ground that the bill did not show that exception was taken to the refusal of each charge separately, but showed, on the contrary, that the charges were all presented and refused together as a whole, and but a single exception was taken to this ruling. This holding is rested upon the cases of Hovey v. Sanders (Tex. Civ. App.) 174 S. W. 1025, and Foster v. Bennett (Tex. Civ. App.) 178 S. W. 1001.

The latter case is not in point. The question there related not to the sufficiency of a bill of exception but to that of an assignment of error which embraced the trial

252 S.W.—48

court's ruling upon a number of special charges.

It is urged in the application for writ of error that Hovey v. Sanders, and Bank v. Ricketts, 177 S. W. 528, both by the Amarillo Court of Civil Appeals, and in each a writ of error refused, are in conflict. Writ of error in the present case was "granted because of apparent conflict in decisions."

In Bank v. Ricketts, the bill of exceptions is, in substance, the same as in the present case, except that the language of the former was "and that the court refused to submit *any* of same and that plaintiff then and there excepted to the action and ruling of the court." (Italics ours.) On rehearing, the Court of Civil Appeals distinguished the Ricketts Case from Hovey v. Sanders in the following language:

"The appellee wholly misconceives the application of the case of Hovey v. Sanders, 174 S. W. page 1026, to the bill of exceptions discussed by us as presenting the error of the court in failing to give special 'charge No. 8, mentioned in the main opinion. In that case the special issues requested were presented as a whole, and the action of the court in refusing all, not any particular one, was excepted to as an entirety. Here the record shows the special charges were presented and refused singly as shown by the indorsement of the trial judge upon the charges, and the bill states in effect that, when he refused to 'give any of such special charges,' the plaintiff excepted to the action of the court. It would be arbitrarily technical to condemn such a bill—a procedure to be commended instead of reprehended."

We think the holding in the Ricketts Case is correct and is conclusive of the question before us. Statutes regulating procedure should be given a liberal construction so as not to defeat the right of appeal, unless there is a clear violation of the statute. The three special charges appear from the record to have been presented and acted upon separately, as each was on a separate piece of paper, separately indorsed and filed, and each bears the indorsement "Refused," followed by the judge's signature.

The bill clearly shows that these charges were presented at the time and in the manner required by statute and that all legal formalities were observed. The bill of exceptions should be read in the light of the record; and when so read we think there can be no question but that the charges were separately presented, separately acted upon, and exception taken to the action of the court upon each. No useful purpose could be served by incumbering the record with three separate bills of exceptions showing these rulings. For obvious reasons appellate courts should welcome and encourage every practice which reduces the volume of the record on appeal, except where the practice would obscure or render uncertain what actually took place in the trial court. The

purpose of a bill of exceptions is simply to show what transpired in the trial court. If this is done with reasonable certainty, it should suffice, regardless of the manner or form in which the showing is made; provided, of course, it has the approval of the trial judge. It would be a strained construction of the language of the bill, we think, to hold that it showed that the three special charges were presented, refused, and excepted to en masse, where it clearly and unequivocally appears from the record that each charge was presented in a separate document, signed by counsel and filed by the clerk, and that each charge was separately indorsed "Refused" by the trial judge. We think clearly the Court of Civil Appeals committed error in refusing to consider the assignments of error questioning the trial court's refusal of these special charges.

It may not be out of place to mention in this connection that the Legislature in 1917 amended the statutes relating to the taking of bills of exceptions to the refusal of special charges by providing, in substance, that where the indorsement of the judge appears upon the charges it shall be conclusively presumed on appeal that all necessary requirements of law have been complied with without presenting formal bills of exceptions.

While that statute cannot be considered in passing upon the rights of parties accruing prior to its passage, it evidences a liberal tendency on the part of the Legislature to simplify the record on appeal. Walker v. Hirsch (Tex. Com. App.) 236 S. W. 710.

[2] Special charge No. 1, quoted above, was without doubt properly refused. That charge, in substance instructed the jury that if the rice was not in as good condition when delivered to the initial carrier as when delivered to the plaintiff by the last carrier, and such difference in condition arose from the fact that the rice had been threshed when wet, the jury should find for defendant transportation company. It is quite evident that in drawing this charge it was made to express exactly the opposite to what was intended. If the rice was not in as good condition when the carriers received it as it was when they redelivered it to plaintiff, it must necessarily have enhanced in value during the shipment. For this enhancement in value to the owner there could manifestly be no recovery, regardless of the cause of the enhancement. However palpable the mistake, it was clearly not the duty of the trial court to correct it, and no error was committed in its refusal.

A careful reading of special charge No. 2 and the fifth paragraph of the court's charge quoted above, we think, will disclose that this particular special issue was fully and fairly embraced in the court's main charge

to the jury, and the giving of this special charge would therefore have been nothing more than a repetition of the main charge. It was therefore not error on the part of the trial court to refuse it.

[3] Special charge No. 3 instructed the jury, in substance, that if the damage shown at Houston was the result of a wet or damp condition of the rice when threshed, and of its being subsequently placed in closed box cars on the railroad at Clinton, they should find for defendant. Paragraph 6 of the court's charge above quoted instructed the jury if they should find for plaintiff to assess the damage at the difference between the market value of the rice at Houston at the time of its delivery to plaintiff in its then condition and what would have been its market value at the same time and place had it been in the condition it was when originally received by the transportation company for shipment. It will thus be observed that paragraph 6 of the main charge instructs the jury to find for the plaintiff the full difference between the value of the rice when delivered to the initial carrier and the value when delivered by the last carrier, regardless of the cause of this difference in value. Paragraph 5 of the court's charge only relieves the defendant transportation company from liability for 'deterioration in value in transit between the time it received the shipment and the time it delivered it to the railway company, if such deterioration was due to the previous condition of the rice. Whereas the sixth paragraph of the main charge includes generally all deterioration in value in transit on the line of the railway company as well as in the hands of the transportation company. Special issue No. 3 particularly directed the attention of the jury to the issue that, if the deterioration in transit arose by virtue of the previous condition of the rice, which did not develop until it was placed in closed box cars after it was delivered by the transportation company to the railway company, the defendant would not be liable therefor. There can be no question but that special issue No. 3 was a correct statement of the law and was not covered by the court's main charge to the jury. It was error, therefore, to refuse it unless the evidence were such as not to raise a question of fact upon the issue it presented. The rice had been stored in a warehouse for over five months since being threshed, and was in the railroad's custody less than two days. It may seem highly improbable that any latent injury to it, as the result of becoming wet during threshing which had not fully developed during the time it was stored in the warehouse, would develop during the short time it was in the railroad's custody. There was evidence, however, that rice which is damp will rapidly become moldy when plac-

ed in closed box cars, especially in warm weather. We have no judicial knowledge upon the subject, and cannot say as a matter of law that the theory embraced in special charge No. 3 is wholly hypothetical and without any support in the evidence. The main issue in the case, as stated above, was whether the injury to the rice was caused by its getting wet while being threshed or by the manner in which it was handled by the transportation company. There being a sharp conflict in the testimony upon this issue, we think clearly the transportation company was entitled to have the measure of its liability submitted to the jury correctly and unequivocally. Special issue No. 3 presented a phase of the case which the evidence, as we view it, to some extent seems to raise, and which the transportation company had the right to have presented. We therefore think that special issue No. 3 was improperly refused.

[4] The only remaining question of any importance is whether the trial court correctly excluded the following testimony of the witness Gano:

"That about two months after the rice in controversy was shipped he examined at the Pritchard Rice mill, in Houston, Tex., one-half of what was known as the Williams rice for the Old River Rice & Irrigation Company, and that he graded the same into 2's and X's; that this was about during the month of April or May, 1911, and that said one-half of said rice, so known as the Williams rice, so owned by said Old River Rice & Irrigation Company, showed 380 sacks graded as 2's and 144 sacks graded as X's, and that graded as 2's was classed as No. 2 and that graded as X's was damaged or musty rice. That there was no distinction or difference in rice which had become recently wet and that which was remotely wet, and that you could hardly tell the difference, because they are both musty and damaged, and that rice which was shipped between the 1st and 6th of March and loaded between the 1st and 6th of March and arrived in Houston about the 16th of March, at a period of from 10 to 16 days from the time of its initial shipment, and had become wet during said period of from 10 to 16 days, would not have shown the same condition that this Williams part of said crop did, which had been sampled by said witness, and that if it had gotten wet on the barges it would have been wet in spots, whereas, if it had been wet before its shipment it would have been wet through and through, and that the discoloration of the hull would not be the same under a recent wetting as it would be after it had been laying around for months, and that you can usually tell the difference in classing rice as to whether the damage to it is remote or late damage. * * *"

The clear purpose of this testimony was to show by circumstantial evidence that the rice in question was not in as good condition at the time it was delivered to the transportation company as testified to by plaintiff's inspector, and that at least the part of it which was raised by Williams could not then have been No. 1 rice, but was all No. 2 and X's. The evidence shows that rice is graded into the three grades mentioned, the market value of which at Houston at the time in question was $2.60, $2.35, and $2, respectively, per barrel, plus 15 cents freight. The testimony of Gano was objected to and excluded upon the ground that it was not shown that the Williams rice, examined and graded by Gano, had received the same handling and treatment that the rice in suit had received. As stated above, the record shows that the landlord's and tenant's part of the Williams rice was threshed under more or less unfavorable weather conditions, and was divided sack by sack alternately between the landlord and tenant at the time of threshing. Both portions of the crop, that of the landlord and that of the tenant, were placed in the same warehouse at Cove and remained there from September, 1910, until the spring of 1911. The landlord's part, that in question, left the warehouse the 1st and 6th of March, 1911, whereas the tenants part, that graded by Gano, was not shipped until some time in May, 1911, or about two months later. It is true there is no evidence showing the manner in which the tenant's part of the crop was handled from Cove to Houston. On the other hand, the testimony of Gano above quoted clearly shows that from his observation of the rice when he examined it at Houston, its grade was not the result of any recent wetting, but was due to its having become wet sometime prior to its shipment, and that the condition he found could not have resulted from its having become wet in transit. We think the showing in the record that the tenant's part of the Williams rice examined by Gano was injured by wetting when it was harvested and not from any manner in which it was handled after March 1, 1911, was sufficiently established to render the testimony of the grade of the rice at Houston when examined by Gano admissible as a circumstance tending to show that the landlord's half of the same crop harvested and stored in the warehouse at Cove, under substantially the same conditions, was not of a materially different grade when shipped from Cove from the tenant's half of the rice when graded at Houston. The objections urged to the testimony, we think, go to its weight, which was for the jury, and not to its admissibility; and the court committed error in excluding it.

We conclude that the judgment of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.