**Lou S. MURRAY, Appellant,**

v.

**Thomas P. MURRAY, Appellee.**

**No. 15788.**

Court of Civil Appeals of Texas.

Dallas.

June 16, 1961.

Rehearing Denied Sept. 29, 1961.

Gilbert P. Howard and John A. Rawlins, Dallas, for appellant.

Hughes, Donosky, McCracken & Hunt, Samuel Donosky, Dallas, for appellee.

DIXON, Chief Justice.

Our opinion heretofore rendered in this appeal is withdrawn and the following opinion is substituted therefor.

This is an appeal from an order (1) reducing the amount of the monthly child support payments, and (2) denying appellant an allowance for attorney's fee.

On April 22, 1955, appellant Lou Bottema, then Lou Murray, was granted a divorce from appellee Thomas P. Murray after a trial before Hon. Paul Peurifoy, Judge of the 95th District Court sitting for the Judge of the Juvenile Court of Dallas County. The parties had entered into a written agreement whereby appellee obligated himself among other things to pay $250 per month as child support for his two children, who were then seven and four years of age respectively. The contract provided that the amount of the monthly payments might later be changed either by written agreement of the parties, or by court order upon a showing that appellee's financial circumstances or the financial needs of the children had changed.

The contract was copied in and made a part of the divorce decree. Custody of the children was awarded to appellant. The judgment recites that another child, then twelve years of age, born to appellant of a previous marriage, had lived with the parties during their marriage, but had not been adopted by appellee.

On October 23, 1957 appellant, who had remarried and moved to California, filed a motion to hold appellee in contempt of court for failure to keep up his child support payments.

On the same date, October 23, 1957, John A. Rawlins and Gilbert P. Howard were appointed attorneys for appellant under authority conferred on the court by Rule 308–A, Texas Rules of Civil Procedure.

In an amended motion filed December 6, 1957 appellant alleged that appellee had arbitrarily reduced his payments to $75 semi-monthly, and finally beginning June 16, 1957, had discontinued making any payments whatsoever with the result that he was $1,775 in arrears. She prayed that appellee be confined in jail for contempt and that she be allowed an attorney's fee of $500.

On January 21, 1958 appellee filed an answer to the contempt motion and a motion to reduce his child support payments, in which pleading he alleged that soon after entering into the written agreement he had discovered that the sum he had agreed to pay as child support was beyond his financial ability, that he had found it necessary to borrow money and sell certain assets in order to try to keep up his payments, and that as a consequence he had become greatly involved in debt and was in arrears in his child support payments. Appellee further alleged that part of his financial troubles was due to the fact that he had found it necessary to pay part of the burial expenses of his father and to defray part of the expenses of the care of his aged mother. The record shows that appellee had also remarried.

Appellee also alleged that he had informed appellant of his financial plight and an agreement between them had been entered into whereby the amount of the child support payments was reduced. Appellee pled that the amount of his payments be reduced by the court to $150 per month. Appellee's testimony supported his pleadings.

Following the filing of appellee's answer there began an unusual train of events. On January 21, 1958 a hearing on the motion began before Hon. Dwight McCormack, Judge of the Juvenile Court of Dallas County. In one of her later pleadings appellant alleges that following the hearing Judge McCormack made an entry on the court's docket sheet as follows:

"1–21–58—Motion in contempt sustained. Commitment suspended on condition Respondent pay arrearage in amount of $1,775.00 on or before July 15, 1958. Motion to reduce sustained. Original Judgment modified and child support set and ordered in amount of $166.00 per month payable semi-monthly as per previous dates.

"Dwight McCormack,
Judge."

The court's docket sheet was not introduced into evidence.

However, the Statement of Facts shows that at the conclusion of the testimony, Judge McCormack made this statement:

"The Court: The motion for contempt is sustained. Commitment is suspended on conditions (sic) the respondent pays an arrearage in the amount of seventeen hundred seventy-five dollars on or before July 15th, 1958. Motion to reduce sustained; original judgment modified and child support ordered in the amount of one hundred sixty-six dollars per month payable semi-monthly and payable as per previous date.

*"Mr. Rawlings: Judge, you didn't overlook the matter of attorney's fees?*

*"The Court: Yes, I did. I want a slight explanation of that. I probably heard that evidence.* (At this point after the testimony was concluded there was an off the record discussion held between the Court and Counsel.)" (Emphasis ours.)

The record before us contains no written decree signed by Judge McCormack. The attorneys for the parties agree that no such judgment was ever entered on the minutes of the court.

Much later in the course of perfecting a bill of exceptions, one of appellant's attorneys stated that he had prepared a written judgment which was signed by Judge McCormack before being turned over to appellee's attorney for approval. The record contains a copy of the document, but the signature of Judge McCormack has been scratched out. In a motion to enter judgment nunc pro tunc appellant says that after Judge McCormack had signed the decree, he instructed his clerk to hold it pending his decision in regard to appellee's objections to the instrument as drawn. Appellee's attorney says that Judge McCormack scratched out his own signature because the document, drawn by appellant's attorney, had not been submitted to appellee's attorney prior to the signing.

Meantime Judge McCormack died. No written judgment had received his final approval. None had been entered on the minutes of the court. Judge McCormack was succeeded as Judge of the Juvenile Court by Judge Lewis Russell.

On October 9, 1959 appellant, who had become Mrs. Lou Bottema, filed a motion to enter judgment nunc pro tunc. Appellee filed a written answer opposing the granting of the motion. On December 2, 1959 the motion was sustained by Judge Russell.

The judgment entered nunc pro tunc carried out the main provisions of the proposed judgment prepared by appellant's attorney, which proposed judgment Judge McCormack had signed but from which his signature was later obliterated apparently by the Judge himself. Appellee was held in contempt but his commitment to jail was suspended on condition that he pay $1,775 by July 15, 1958, his child support payments were reduced to $166 per month, and appellant's request for an allowance for attorney's fee was denied.

On the same date that judgment nunc pro tunc was entered, December 2, 1959, Judge

Russell also signed an order which recited that appellee had theretofore paid the entire amount of his arrears in child support payments, $1,775, of which $1,000 had been paid on July 15, 1958, and $775 on October 22, 1959, and that by doing so appellee had purged himself of contempt.

Soon after this appeal was perfected by appellant appellee filed a motion to dismiss the appeal on the ground that the parties had reached a settlement of their controversy. Attached to the motion was a copy of a telegram from appellant to appellee and a copy of a notarized letter dated May 26, 1960 from appellant to her attorney, both documents signed Lou S. Murray, advising that an understanding had been reached between the parties and requesting that the appeal be discontinued.

Appellant contested appellee's motion to dismiss the appeal. Attached to her written answer were copies of two letters written by appellant to her attorneys withdrawing her previous instructions to discontinue the appeal. Her grounds were that her instructions of May 26, 1960 were written without knowledge of a tentative settlement proposition then pending between the attorneys.

### Opinion

The only questions before us on this appeal involve the court's orders (1) reducing the amount of child support payments from $250 per month to $166 per month, and (2) refusing any allowance for attorney's fee.

Appellant's first, second, third and fourteenth points on appeal all attack the court's alleged error in undertaking to modify a contractual judgment for child support. Her points in substance are that it was error (1) to modify a contractual judgment at all, (2) to modify a contractual judgment without pleading or proof of changed conditions, (3) without pleading and proof of the existence of the grounds specified in the contract for a modification of the child support payments, which contractual grounds were: (a) by written consent, or (b) be-

cause of changed financial conditions of appellee or the children, and (14) to fail to limit the court's order to the terms and conditions contained in the contractual judgment.

█ The fact that the parties had entered into a contract in regard to child support and that the Juvenile Court recognized the contract, did not deprive the Court of its statutory authority under Art. 4639a to enter an appropriate child support order or later to change its order. Brady v. Hyman, Tex.Civ.App., 230 S.W.2d 342; Mobley v. Mobley, Tex.Civ.App., 221 S.W.2d 565; Townsend v. Townsend, Tex.Civ.App., 115 S.W.2d 769; Ex parte Birkhead, 127 Tex. 556, 95 S.W.2d 953.

We quote with approval this statement from 21 Tex.Jur.2d 45–47:

"A decree or judgment for child support based on an agreement possesses dual characteristics and is interpreted like a contract between the parties. Though the judgment may partake of the nature of a contract and also of the nature of a decree, contractual provisions, even though made a part of a decree, insofar as they go beyond statute provisions, cannot be enforced by contempt proceedings. * * *

"Under the statute a divorce decree providing for child support payments in accordance with an agreement of the parties may be modified by a subsequent order, and if modified may be enforced by contempt proceedings only as to the modified amount. However, the modification does not affect the liability for the contractual amount, and the obligee is entitled to recover delinquent payments based on this contract by the ordinary processes of law for the enforcement of contractual obligations."

Our holding relates only to the liability imposed on appellee under Art. 4639a by virtue of the nunc pro tunc order of December 2, 1959, which order may be enforced by

contempt proceedings. Nothing contained herein shall affect the contractual obligations assumed by appellee and appellant or the right of the parties to assert their contractual claims or defenses through the ordinary processes of law for the adjudication of contractual obligations. Appellant's first, second, third and fourteenth points are overruled.

In her fourth, sixth, tenth, eleventh and twelfth points on appeal appellant says that the court erred in (4) attempting to make a new determination of what the intention of the parties was as to the number of children for whom support was to be paid, (6) assuming that it was intended that the payments were for the support of three instead of two children, (10) sustaining special exceptions to part of appellant's motion for new trial, (11) sustaining objections and excluding testimony of statements made by Judge Dwight L. McCormack, as a part of the final ruling on contempt and res gestae thereof, and (12) excluding verbal statements made by Judge McCormack amounting to findings of fact and conclusions of law.

The effect of the trial court's sustaining of exceptions to appellant's motion for new trial was to exclude from consideration the alleged reasons given by Judge McCormack in connection with his final decision on contempt and modification. The last entry in the Statement of Facts, part of a quotation from the record already given herein, is this: "At this point after the testimony was concluded there was an off the record discussion held between the Court and Counsel." There is nothing in the record to show what was said by the Judge in the discussion. The context suggests that the discussion was concerned with the subject of an allowance of attorney's fees. However, one of appellant's attorneys offered to testify that Judge McCormack said that it appeared to him that the amount was originally intended for the support of three children, and with that he took his pencil and said that for that reason he was re-

ducing the amount of support to $166.66 and the Judge further said he was going to deny the application for attorney's fees since appellant had already paid $150 to one of the attorneys. Objection to this testimony was sustained.

■ We are of the opinion that it was proper to exclude the proffered testimony concerning the matters of which appellant complains in her fourth, sixth, tenth, eleventh and twelfth points on appeal. Oral declarations of a judgment cannot be accepted as substitutes for the written findings of fact and conclusions of law to which appellee was entitled under the provisions of Rule 296, T.R.C.P. Kinney v. Shugart, Tex.Civ.App., 234 S.W.2d 451; Long v. Smith, Tex.Civ.App., 162 S.W. 25. Said points are therefore overruled.

But in connection with this phase of the controversy we shall turn now to consideration of appellant's thirteenth point on appeal wherein she complains of the failure of the court to file findings of fact and conclusions of law. The record reveals that on February 3, 1960 appellant filed her written request for findings and conclusions. Following the court's failure to comply, appellant on March 1, 1960 in writing called the omission to the attention of the judge pursuant to Rule 297, T.R.C.P. No findings of fact or conclusions of law were ever filed.

The omission was important to appellant in this case. She was entitled to know the factual and legal basis for the court's judgment. There were fact issues necessarily determined by the court. Appellee testified over appellant's objection that the $250 child support which he had been originally ordered to pay and which he had agreed to pay was really for the support of four persons: his wife, his two children and his stepson. Did the court accept this interpretation of the original order, and did the court therefore reduce the child support one-third because he believed that the original order required appellee to support three instead of two children?

**598**

Appellee testified that his former wife agreed to a reduction of the child support to $150 per month. Appellant denied any such agreement. Was the court's judgment based in part on a finding that such an agreement was made?

■ The answers to these and other questions cannot be known in the absence of findings of fact and conclusions of law. The failure of the trial judge to file findings and conclusions was reversible error under the circumstances.

We can understand Judge Lewis Russell's reluctance to file findings of fact and conclusions of law in this case. He did not sit as Judge at the divorce trial when the original child support order was entered, nor did he sit as Judge when the motion to reduce child support was heard by Judge McCormack and sustained in part. The record does not show when the statement of facts was completed and was available for study and analysis. It does show that the statement of facts was approved by Judge Russell on March 18, 1960 and filed in this court March 25, 1960. If Judge Russell did not have an opportunity to study the statement of facts prior to March 18, 1960 his attempted findings of fact would hardly have been anything more than guesses.

Nevertheless, we believe that in compliance with Art. 2248, V.A.C.S., it was incumbent upon Judge Russell to make and file findings and conclusions. The statute provides that when a judge shall die his successor may file findings and conclusions.

Even if we were to interpret the statute as merely directory, not mandatory, we would nevertheless be bound to sustain appellant's thirteenth point. For such an interpretation would mean that appellant, through no fault of her own, would be denied the findings and conclusions to which she was entitled under Rules 296 and 297, T.R.C.P. Though the ruling involved a statement of facts and bills of exception in a criminal case, the holding of the Court of Criminal Appeals in Pierson v. State, 147

Tex.Cr.R. 15, 177 S.W.2d 975 (Syl. 10) seems to us to be applicable to a situation like this where an appellant has been denied findings of fact and conclusions of law. Appellant's thirteenth point is sustained.

■ In her seventh, eighth and ninth points appellant complains because the trial court did not allow her an attorney's fee. The record reveals that sometime before her motion for contempt was filed appellant had employed her attorneys and had paid them a fee of $150 to represent her in the contempt proceedings. She also sent her attorneys checks for $10 and $7 for court costs. Thereafter, on the day the motion was filed the attorneys were appointed by the court under Rule 308-A, T.R.C.P.

We think Rule 308-A, T.R.C.P., was promulgated primarily for the benefit of persons who are not financially in position to employ an attorney, not for persons who have the money for their own defense. Be that as it may, in the second paragraph of the Rule it is expressly provided that except with the consent of the court no fee shall be charged by or paid to the attorney for his services in representing the claimant. Appellant's seventh, eighth and ninth points are overruled.

However the trial judge's holding in regard to attorney's fee brings us back to appellant's thirteenth point. She was entitled to findings of fact and conclusions of law which would make clear the factual and legal basis for the court's refusal to allow her an attorney's fee. We refer again to quoted part from the last paragraph in the statement of facts where there is recorded a discussion between the court and counsel in which the court apparently speaking of the attorney's fee said: "I want a slight explanation of that. I probably heard that evidence." Then followed an off the record discussion between the court and counsel. But the record is silent as to the explanation, or the evidence referred to by the court, or the court's grounds for refusing to allow an attorney's fee.

Because of our sustaining appellant's thirteenth point on appeal, we reverse the trial court's judgment and remand the cause for another trial.

## On Rehearing

Appellee in his motion for rehearing charges that we erred in considering and sustaining appellant's thirteenth point for the reason that (1) appellant filed no bill of exceptions complaining of the trial court's failure to make findings of fact and conclusions of law; and (2) appellant failed to call the attention of the trial judge to his omission to make findings of fact and conclusions of law as required by Rule 297, T.R.C.P.

In support of the first of the above points appellee cites us to the cases of Steppe v. O'Day, Tex.Civ.App., 315 S.W.2d 599, 603; Smith v. Vankirk, Tex.Civ.App., 314 S.W.2d 377, 380; Spradlin v. Rosebud Feed & Grain Co., Tex.Civ.App., 294 S.W.2d 301, 302; Gunst v. Dallas Trust & Savings Bank, Tex.Civ.App., 8 S.W.2d 806, 807; and 4 Tex.Jur.2d 37.

We do not disagree with the holdings in the above cases, but we are of the opinion that their holdings are not applicable under the circumstances presented in the instant case. Rule 419, T.R.C.P., provides that any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party. In this case appellant stated expressly in his brief that the trial court failed to file findings of fact and conclusions of law. This statement by appellant was not only not challenged by appellee, it was admitted by appellee to be true.

We quote from appellant's brief:

"Thirteenth Point Restated

"The error of the trial court in failing to file findings of fact and conclusions of law. * * *

"Though request was timely made and the proceedings were available, the present judge failed to file such findings of fact and conclusions of law; * *."

In his brief appellee answered as follows:

"Thirteenth Counterpoint Restated

"The trial court did not err in failing to file findings of fact and conclusions of law, because the judge of the trial court is now deceased and left no memorandum of office, and for the further reason that the appellant has his Statement of Facts upon which to rely. * *

"Appellee would further show that the failure of a judge to file conclusions of fact is not grounds for reversal when there is a full Statement of Facts in the record, and it does not appear that the appellant has been or could be injured by reason of the non-performance of such duty by the judge.

"Appellee would further show that it would have been futile on the part of the present judge of the Juvenile court of Dallas County, Texas, to attempt to make any finding of fact or conclusion of law, and such effort would have been useless and of no effect in view of the death of the trial judge prior to the entry of judgment in the instant case."

■ The purpose of a bill of exceptions is simply to show what occurred in the trial court. Gulf Coast Transport Co. v. Standard Milling Co., Tex.Com.App., 252 S.W. 751, 754; Whatley v. Davis, Tex.Civ.App., 116 S.W.2d 466. If what occurred otherwise appears there is no need for a bill of exceptions. In this case appellant asserts and appellee admits that the trial court did not file findings of fact and conclusions of law. Under Rule 419, T.R.C.P., we may accept these statements as true.

In his second point on rehearing appellee contends that it cannot be known from the record whether appellant's second letter to the trial judge actually was ever seen by the judge. Appellee cites cases holding that the reminder notice, pursuant to Rule 297,

T.R.C.P., must be called to the attention of the judge—it is not sufficient merely to file the notice with the clerk.

Again we do not disagree with the holdings in the cases cited by appellee. We think the record discloses that the notice was brought to the personal attention of the trial judge.

The second letter of notification, including a notation at the bottom left-hand corner, was as follows:

"February 29, 1960

"Dear Judge:

"In checking with your Clerk today, she advised that findings of fact and conclusions of law have not been filed in the above case. As provided by the Rule, this omission is hereby called to your attention.

"Yours very truly
"/s/ Gilbert P. Howard.
"3-1-60

"Called Mr. Donosky."

With our permission appellant filed a supplemental transcript which contains a copy of an affidavit by the trial judge which affidavit includes this statement:

"I have examined page 85 of the Transcript in said cause on appeal whereon there is contained a copy of a letter from Mr. Gilbert P. Howard to me, dated February 29, 1960. Same is a true and correct copy of the original of said letter which was received by me on March 1, 1960. After receiving said letter calling my attention to the fact that findings of fact and conclusions of law previously requested by Plaintiff as Appellant in said cause on appeal had not been filed, I called Mr. Samuel Donosky by telephone, called his attention to said letter of February 29, 1960, and told him I would have to depend on him to prepare such findings and conclusions because I had no knowledge of the same. I made notation of such call in my own handwriting on said letter and thereupon had the Clerk file said letter on said date of March 1, 1960."

It will be observed that this affidavit does not attempt to change or contradict any document shown in the transcript. It merely makes clear that which could not be clear from the typewritten copy of appellant's letter as shown in the transcript, that is, that the notation "3-1-60 called Mr. Donosky" was written there by the Judge in his own handwriting. Certainly it shows that the letter was brought to the attention of the Judge.

■ Over appellee's objection we sustained appellant's motion for leave to file the Supplemental Transcript. We think our action was proper under Tucker v. Boyd, 156 Tex. 262, 293 S.W.2d 841, 843, in which case our Supreme Court under Rule 428, T. R.C.P., permitted the filing of a certificate by a District Judge in order to make the record speak the truth.

Appellee's motion for rehearing is overruled.