E. G. GASPERSON, Ind. and as Trustee, et al., Appellants,

v.

The MADILL NATIONAL BANK et al., Appellees.

No. 17107.

Court of Civil Appeals of Texas, Fort Worth.

May 8, 1970.

Rehearing Denied June 12, 1970.

Davis, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellants.

Sewell & Forbis, and James E. Forbis, Decatur, for appellee, The Madill National Bank.

Rohne & Hines, and Wayne A. Rohne, Arlington, for Alfred A. Drummond and James A. Drummond, appellees.

## OPINION

BREWSTER, Justice.

This appeal is from a judgment in a non-jury trial. The trial court consolidated for trial three separate cases pending on its docket and ordered the parties to replead. This resulted in the Madill National Bank of Madill, Oklahoma, as plaintiff, suing E. G. Gasperson for $7,791.73 which it claimed was the balance of principal, interest and attorney fees due and owing to such bank on a renewal note that E. G. Gasperson executed, payable to that bank.

E. G. Gasperson and his brother, Adrian Gasperson, and one James E. (Jim) Gasperson, filed and went to trial on what they designated as an amended answer, cross-action and third party action. Jim Gasperson was designated in this pleading as an intervenor.

The Gaspersons filed a general denial to the bank's suit. By way of a third party action against Alfred A. Drummond, James A. Drummond and Dorothy Rabon, the Gaspersons alleged: that starting in 1952 and for more than 10 years thereafter, Alfred A. Drummond and E. G. Gasperson were jointly interested in various business transactions and during the latter years of that period E. G. Gasperson's brother, Adrian, also participated in some of those ventures; starting in 1963 they started trying to settle their various business dealings and accounts but were unable to do so and several lawsuits resulted including the three cases that have been consolidated here as well as a case brought by Alfred A. Drummond against Adrian Gasperson in Marion County, Texas; that in July, 1965, E. G. Gasperson and Alfred A. Drummond did reach an oral agreement to compromise all matters involved in the three consolidated cases; and that in making the settlement E. G. was acting for himself and as agent of Adrian and Jim Gasperson; and Alfred A. Drummond was acting as agent for James A. Drummond, Dorothy Rabon and the Madill Bank.

The alleged terms of such settlement agreement were both lengthy and complicated. Among the various promises alleged to be a part of such overall settlement agreement was (1) a promise of Alfred A. Drummond to reconvey to E. G. Gasperson 4 overriding royalty interests in the Taylor, Aspin, Hartsell and G. T. LeMay leases and 20 royalty acres in said G. T. LeMay land, all in Wise County and ½ of which mineral interests E. G. Gasperson promised to in turn convey to Adrian Gasperson; (2) the promise of Alfred A. Drummond to convey to E. G. Gasperson a ½ interest in the surface of the 160 acre G. T. LeMay tract in Wise County, plus a ½ interest in all minerals under that tract and under an adjoining 8 acre tract; (3)

E. G. Gasperson and Alfred A. Drummond agreed that they would then partition the surface of the 160 acre LeMay tract with Gasperson getting the east half and Drummond the west half; (4) A. A. Drummond agreed to convey a ¼ mineral interest or 25 mineral acres in a 100 acre tract in the Epps D. Payne Survey in Comanche County to E. G. Gasperson; (5) they agree that E. G. Gasperson and A. A. Drummond would sell and convey to James E. (Jim) Gasperson and Pickens tract in Wise County for $6,000.00.

It is apparent that this alleged oral settlement agreement involved a number of different promises to convey various interests in real estate as indicated in the last paragraph.

It was alleged that this settlement agreement was intended as a package settlement and that each of the various matters being compromised were compromised in consideration of the compromise of the other matters that were being settled.

It was alleged that one part of the package settlement agreement was that E. G. and Adrian Gasperson would pay to A. A. Drummond the principal balance and simple interest to August 2, 1965, on two deed of trust notes made by Adrian Gasperson to A. A. Drummond, the pay-off sums being $4,433.65 and $3,175.19, and would also pay to Dorothy Rabon $741.13 and $711.37, being amounts due on two deed of trust notes signed by Adrian Gasperson and owned by Dorothy Rabon. When these payments were made then A. A. Drummond and Miss Rabon were to release their liens on land owned by Adrian Gasperson in Marion County. It was alleged that this was all to be done in settlement of case No. 17,846, A. A. Drummond vs. Adrian Gasperson, pending in Marion County, and that when this was done that suit was to be dismissed with prejudice.

It was alleged that A. A. Drummond and E. G. and Adrian Gasperson all agreed to meet in Jefferson, Texas, on August 3, 1965, to conclude the part of the settlement relating to the Marion County suit and to meet in Fort Worth on August 6, 1965, to there sign all documents relating to the closing of the rest of the settlement. The Gaspersons pleaded that they did go to Jefferson on August 3, 1965, and did there pay the sums they had agreed to pay in connection with the Marion County suit, and that A. A. Drummond got the money and then refused to conclude the rest of the settlement agreement.

The Gaspersons pleaded that the Drummonds, the Bank and Dorothy Rabon having accepted these sums paid by the Gaspersons on the Marion County deal in part performance of the entire settlement agreement and then having refused to carry out the rest of such agreement are now estopped from recovering in this case, except in accordance with the settlement agreement.

The Gasperson pleading is lengthy, occupying with its exhibits about 52 pages of the transcript. It is complicated and will be referred to hereafter in this opinion only in instances where it is necessary to do so in order to dispose of this appeal.

Under the court order requiring a repleader Alfred A. and James A. Drummond and Dorothy Rabon occupied the position in the case of defendants in the third party action against them brought by the Gaspersons.

They filed an answer to the third party complaint. Alfred A. and James A. Drummond also filed a counterclaim in the case against E. G., Adrian and James E. (Jim) Gasperson, seeking recovery of sums of money they claimed were owed them, actual and exemplary damages, judgment quieting title to land, and injunctive relief.

In addition to the above, some of the parties filed a number of trial amendments containing pleas and alternative pleas all of which added to the complicated nature of the entire matter.

After a trial which took almost 4 weeks, the trial judge signed one judgment on May 22, 1969, and an amended judgment on Au-

gust 15, 1969. This last judgment was 17 pages long.

This last judgment (the amended one) awarded the Madill National Bank a judgment for $7,791.73 against E. G. Gasperson. The mortgage lien given on certain personalty to secure this note was foreclosed. The judgment awarded a recovery of $12,330.68, plus interest from date of judgment, to Alfred A. Drummond against E. G. Gasperson. This arose out of a transaction where A. A. Drummond borrowed $5,000.00 from each of two banks for the use and benefit of E. G. Gasperson. The decree provided that when Drummond was paid this money that he should execute deeds reconveying to E. G. Gasperson 4 overriding royalty interests and 20 non-participating royalty acres that had been conveyed to Drummond as security for him borrowing the $10,000.00 for Gasperson. The decree provided that when Drummond was paid this part of the judgment, then the sum in the court registry attributable to this mineral interest was to be the sole property of E. G. Gasperson. If Gasperson did not pay this part of the judgment in 30 days, then the sums on deposit in court just referred to would belong solely to A. A. Drummond. The judgment did not give E. G. Gasperson credit on his debt for these sums. The judgment further provided that if Gasperson did not pay this part of the judgment in 30 days then an Order of Sale would issue and the 4 overriding royalty interests and the 20 non-participating royalty acres would all be sold as under execution to satisfy this part of the judgment. The judgment further decreed Alfred A. Drummond to be the owner of 20 mineral acres in the John Frederick and Z. T. Brazier Surveys in Wise County, sometimes called the Percy Jones mineral interest. Such mineral interest underlay a part of the G. T. LeMay farm. Alfred A. and James A. Drummond were decreed to be the owners of all the surface and all the minerals of the G. T. LeMay farm (Wise County) except 1/64 of 7/8 and except an undivided 20 non-participating royalty acres, both of which were conveyed to Drummond by E. G. Gasperson as security. The title to the surface and minerals of this LeMay farm was ordered quieted in Alfred A. and James A. Drummond. All of the Gaspersons involved in the case were enjoined from trespassing on the LeMay farm. The judgment further decreed Alfred A. Drummond to be the owner of all the surface and 1/2 the minerals under the Pickens tract in Wise County. It enjoined all the Gaspersons in the suit from entering upon such tract and provided that this part of the decree was without prejudice to any right E. G. Gasperson had under a certain option agreement entered into with R. E. Roberts. The decree awarded Alfred A. Drummond judgment against E. G. Gasperson for $1,376.00 damages for his possession of the LeMay tract and an additional $186.00 for Gasperson's 1/2 of the cost of the Dollie Yale—Belle Wortman abstract. The decree also awarded a recovery to Alfred A. Drummond of $2,525.00 against E. G. and James E. (Jim) Gasperson, jointly and severally, for rentals for their possession of the Pickens tract. It awarded E. G. Gasperson judgment against Alfred A. Drummond in the sum of $2,834.69 representing 1/2 of proceeds attributable to certain minerals that were included in the Roberts transaction. The decree provided for 6% interest on this item from date of judgment. The decree awarded E. G. Gasperson a recovery against Drummond of 1/2 of 1/4 of the minerals under a 60 acre tract in the Osborne Cross Survey in Wise County. The decree also gave E. G. Gasperson a recovery against Alfred A. Drummond of 1/64 overriding royalty interest in the Locke, Gasperson, and Greenwood leases in Wise County. All other relief sought by any party was denied. Two-thirds of the costs were taxed against E. G., Adrian and James E. (Jim) Gasperson and the other 1/3 against Alfred A. Drummond.

E. G., Adrian and James E. (Jim) Gasperson and Alfred A. Drummond each gave notice of appeal from the parts of this judgment adverse to them.

The appeal of the Gaspersons is based upon 49 points of error.

The Gasperson briefs place considerable emphasis on some oral pronouncements claimed to have been made by the trial court at the conclusion of the attorneys' arguments in the case. The Gaspersons contend that the trial judge at that time made some pronouncements, oral findings and oral declarations as to the judgment he was going to render on various issues that were involved in the case. The Gaspersons claim that later when the trial judge signed the written findings of fact and conclusions of law and the last draft of the written judgment that is being appealed from, that such written instruments contained many findings, conclusions, and holdings that were completely different from and in conflict with the oral statements made by the trial judge at the conclusion of the argument of the attorneys as to the findings he was going to make and the judgment he would render.

We are convinced that in deciding the matters urged on this appeal that we should not consider such oral pronouncements referred to above. They cannot constitute a substitute for the written findings of fact and conclusions of law provided for by court rules. The same thing is true in so far as the written court judgment is concerned. Any time there is a conflict between oral pronouncements made by a trial judge and his written findings of fact, conclusions of law, and signed court judgments that are provided for by rules of trial, then the matters set forth in such written instruments control. Murray v. Murray, 350 S.W.2d 593 (Dallas Tex.Civ.App., 1961, no writ hist.); Ramirez v. Milton Provision Co., 231 S.W.2d 547 (San Antonio Tex.Civ. App., 1950, no writ hist.); 57 Tex.Jur.2d, Trial, p. 337, § 580, and p. 355, § 594.

The case of Kinney v. Shugart, 234 S. W.2d 451 (Eastland Tex.Civ.App., 1950, writ ref.), holds that there is no law in Texas that authorizes an appellate court to consider in passing on an appeal oral statements made by the trial judge at the time judgment was rendered.

The first three points of error in the Gasperson brief claim error by the trial judge in his refusal to decree specific performance of the alleged July 23, 1965, compromise settlement agreement between the parties.

We overrule these points because we are convinced that the Gasperson pleadings, the undisputed evidence in the case, the admissions of the Gaspersons and their attorney while testifying, and the findings of the trial judge all clearly show that the alleged compromise settlement agreement of July 23, 1965 was an incomplete agreement; that all essential terms of the contract had not been settled by the parties to it on July 23, 1965. There was not a meeting of their minds on all such matters. The agreement left material matters open for future adjustment. As a result there was no contract and none of the parties are bound by it.

It is settled law that a contract having these characteristics is not a binding contract and cannot be enforced. See 13 Tex.Jur.2d 127, Sec. 14 (Contracts); Smulcer v. Rogers, 256 S.W.2d 120 (Fort Worth Tex.Civ.App., 1953, ref., n. r. e.); and H. B. Zachry Co. v. Maerz, 223 S.W.2d 552 (San Antonio Tex.Civ.App., 1949, no writ hist.).

The compromise settlement agreement in question covered a series of transactions occurring between the parties over a period of years and was of necessity long and covered many transactions.

The Gasperson pleadings alleged in substance in subd. (d) of paragraph 7 of their amended answer and cross-action that one part of such agreement was that Alfred A. Drummond would render a correct accounting of all income received by him on certain mineral properties over an 18 month period and pay ½ of such income plus 6% interest thereon from the time Drummond received it to E. G. Gasperson.

In subdivision (e) of paragraph 7 of that pleading they also alleged in substance that Alfred A. Drummond agreed to convey to E. G. Gasperson certain interests in the surface and minerals in what they knew as the LeMay tract. This was followed by the following allegation: "(e) * * * with both Alfred A. Drummond and E. G. Gasperson agreeing to make correct accounting to one another for all such expenditures by either of them, and the said Drummond agreeing to make correct accounting for all receipts of income and revenue from said property by him, * * *."

The attorney for the Gaspersons testified in substance that at the meeting of July 23, 1965, Alfred A. Drummond produced Gasperson Exhibit 62 which related to 9 different deals; that Drummond had his schedule there setting out the amounts he claimed were due him (by Gasperson) plus interest to August 2, 1965, on these; that as to this matter it was the parties' agreement that E. G. Gasperson would pay to Mr. A. A. Drummond, in connection with the closing of the settlement agreement, any of those items that Gasperson could not later present proof satisfactory to both Gasperson's lawyer and A. A. Drummond's lawyer showing that he had already settled with Drummond on those items. This was one part of the settlement agreement of July 23, 1965.

He further testified in substance that a part of the July 23, 1965, settlement agreement was that A. A. Drummond would deed E. G. Gasperson certain interests in the LeMay land; Gasperson would pay Drummond ½ of the purchase price plus ½ the expense Drummond had been out on that tract of land, less ½ of the revenue on this tract that Drummond had collected. In connection with this LeMay tract E. G. Gasperson was claiming he had also been out some money on this tract and that Drummond owed him ½ of that sum. Mr. Gasperson's attorney further testified that a part of the settlement agreement of July 23, 1965, was that with reference to the LeMay tract feature of the agreement that Gasperson could present at their August 6, 1965, meeting his cancelled checks or other written evidence to show that Gasperson had already paid or settled the items that Drummond was claiming Gasperson owed him in connection with this tract. The testimony was that such evidence of Gasperson would be on August 6, 1965, presented to the attorney for the Gaspersons and the attorney for the Drummonds and these two lawyers were to jointly pass on the question as to whether Gasperson had proved he had paid for such items.

The trial judge's finding of fact No. 41 was in substance that as a part of the July 23, 1965 agreement, the parties agreed to make a correct accounting to each other regarding their expenditures on and income from the LeMay land and to partition said land.

His finding No. 42 was in substance that there were a number of other matters that were in dispute at the time of the July 23, 1965, settlement agreement and the court proceeded to list them in the finding. The finding went on and stated that these matters were to be resolved (later) by the attorneys for the parties, to-wit: Clyde Marshall and Wayne Rhone.

The Gasperson brief grouped their first 18 points including the first three points above described for discussion because they all relate to findings, decrees and conclusions of the trial court refusing to grant specific performance of the July 23, 1965, compromise settlement agreement.

Since we have held that such agreement could not be enforced by specific performance or otherwise for the reasons above stated, it would not make any difference at all in the outcome of this case whether the Gaspersons are right or wrong about the contentions urged in the rest of their first 18 points.

There are additional reasons why the Gaspersons are not entitled to specific performance of the July 23, 1965, compromise

settlement agreement on the basis of estoppel.

One of the major contentions they make in an effort to get around the Statute of Frauds and thus get enforcement of the July 23, 1965, oral settlement agreement is their contention that Alfred A. Drummond is estopped by his conduct from urging the Statute of Frauds against enforcement of such agreement and is estopped to recover relief inconsistent with such agreement.

■ The contention is that in reliance on such agreement and in part performance thereof, Adrian Gasperson paid off 4 notes to Alfred A. Drummond and Miss Rabon that had been involved in a suit between those parties in Marion County. The contention is further that since Drummond accepted the benefits of such part performance and since the Gaspersons have thus been caused to change their position for the worse an estoppel should arise against Drummond and equity should enforce specific performance of the rest of the agreement.

In reading the Gasperson brief on this point one might easily conclude that the Gaspersons were an entity and were acting in concert. The undisputed evidence in the case reveals that this is not so.

Adrian Gasperson was the only Gasperson that was a party to the Marion County suit involving the notes that were paid off. He was the maker of such notes. Adrian Gasperson was the only one who paid anything at all to Drummond and Miss Rabon when such notes were paid off. It was his money that paid them off. E. G. Gasperson made this fact very clear when he was testifying. He had nothing at all to do with it.

In other words there was no part performance whatever or change of position to their detriment whatever, on the part of either E. G. or James Gasperson.

Under such circumstances we are convinced that there could be no estoppel

against Drummond in favor of either E. G. or James Gasperson under this set of facts.

Certainly no fraud was committed on E. G. or James Gasperson by the trial court's refusal to order specific performance of the July 23, 1965, oral settlement agreement under these circumstances.

One big hurdle the Gaspersons had to get over in this case in order to enforce the alleged July 23, 1965, oral settlement agreement was the Statute of Frauds. Contention is made on this appeal that certain memoranda take this agreement from under that Statute.

Such settlement agreement involved many matters and a number of different features of it involved agreements to convey various interests in real estate.

The undisputed evidence in the case showed that there was no memoranda in writing signed by Drummond that showed an agreement by him to transfer all of the various interests in real estate purportedly covered by such settlement agreement.

The whole contention of the Gaspersons in the court below and on this appeal is that such compromise settlement agreement was indivisible. They claimed that it had to stand or fall together. All parts of it were to be performed, or none of it was to be performed. In line with this contention the trial court found that such agreement was indivisible.

■ We are convinced that where you have an indivisible oral agreement, as this one is claimed to be, calling for the transfer of a number of separate interests in real estate, that in order for memoranda in writing to be sufficient to take that type of an agreement from under the statute (Art. 3995, Vernon's Ann.Civ.St.) that such memoranda would have to cover all the various interests in real estate that were covered by the oral agreement.

■ There is no question, therefore, that this oral settlement agreement was

violative of the Statute of Frauds, Art. 3995, V.A.C.S., and that there was not sufficient memoranda in writing signed by Drummond to take such agreement from under the operation of this statute.

For all of the above reasons the first 18 Gasperson points are overruled.

Gasperson points 27, 31 and 32 are all based on the assumption that the Gaspersons have been sustained in their contention that the July 23, 1965, compromise settlement agreement should be specifically enforced. Since we have overruled that contention we also overrule points 27, 31 and 32.

By point 19, E. G. Gasperson says the trial court erred in decreeing that there was no partnership between him and Alfred A. Drummond on the LeMay farm (surface and minerals), because such conclusion is against the overwhelming weight and preponderance of the evidence.

Point 20 is that the trial judge erred in refusing to make the additional findings of fact Nos. 34, 35, 36 and 37 as requested by the Gaspersons, which findings related to the LeMay farm. Such requested findings tend to support E. G. Gasperson's claim that Drummond holds ½ of the LeMay farm in trust for him.

Point 21 is that the trial court erred in rendering its conclusion of law No. 15 that the Statute of Frauds, the Texas Trust Act and the Statute of Conveyances prevent E. G. Gasperson from getting any interest in the LeMay farm.

The Gaspersons argue these three points together.

The judgment appealed from decreed Alfred A. and James A. Drummond to be the owners of all of the surface and all of the minerals in and under the LeMay farm save and except an overriding royalty of ⅟₆₄ of ⅞, and save and except an undivided 20 nonparticipating royalty acres that were conveyed to A. A. Drummond by E. G. Gasperson as security in a trans-

action of June 2 or 5 of 1961. It quieted title to the tract in the Drummonds and enjoined the Gaspersons from making any further entries on the land.

The findings of fact of the trial judge relative to the LeMay tract were substantially as follows: No. 23, that in October, 1961, E. G. Gasperson contacted A. A. Drummond about buying the LeMay tract; No. 24, that A. A. Drummond paid the entire $32,000.00 purchase price of that tract by installments to the LeMays and Drummond also paid all other costs, taxes, and expenses that were incurred in connection with the LeMay deal; No. 25, E. G. Gasperson has paid no part of the consideration, taxes on the land, or expenses connected with that tract; No. 26, that the seller of the LeMay tract paid E. G. Gasperson a commission of $500.00 for getting Drummond to buy the land and Gasperson has not paid Drummond any part of this commission.

The trial court's conclusion of law No. 9 was that Alfred A. and James A. Drummond are the owners of all the surface and minerals under the LeMay tract except those minerals conveyed as security by E. G. Gasperson to Alfred A. Drummond in connection with a June 2, 1961, transaction.

It was the contention of E. G. Gasperson throughout the trial that in the summer of 1961 he and Alfred A. Drummond had a verbal agreement to buy from the owners all possible outstanding interests in the surface and minerals of the LeMay tract. By this agreement he contended they were to use their joint efforts to get such land, Drummond was to furnish all money and take the title in his name and that E. G. Gasperson would thereafter repay to Drummond ½ of the purchase price and expenses incurred by Drummond after deducting from such sums ½ the expenses Gasperson had paid and ½ the income from such property that Drummond received, and that Drummond was to then convey to Gasperson a ½ interest in all the Le-

May tract that they were able to thus acquire. Gasperson claims that the Drummonds hold a ½ interest in the title to all of the LeMay tract in trust for him and that it is his.

In considering this appeal, and especially Gaspersons' 19th point relating to a question of the overwhelming weight and preponderance of the evidence, we have carefully reviewed the entire record in the case including the statement of facts which alone consists of over 2,040 pages.

There is no question but what there is sufficient evidence in the record to substantiate all of the contentions made by E. G. Gasperson relative to his ownership of a ½ interest in the surface in the LeMay tract and in the part of the minerals in that tract that are involved here. Gasperson and other witnesses offered testimony which, if believed, would have justified the trial judge in finding for Gasperson on this part of the case.

We also hold that there was sufficient evidence in this record offered by Drummond and his witnesses to support the trial court's findings and conclusions to the effect that there was no partnership between Alfred A. Drummond and E. G. Gasperson as to the LeMay farm (surface and minerals). We hold that such findings were not against the great weight and preponderance of the evidence. There is no question but what there was a conflict in the evidence on this part of the lawsuit and the trial court simply resolved the conflict by finding against E. G. Gasperson.

We have concluded that the trial judge was justified by the evidence in believing, as contended by Alfred A. Drummond, that Drummond was completely unwilling in connection with the LeMay properties to again get a considerable sum of money tied up in E. G. Gasperson's behalf, in view of the unfortunate experiences he claimed to have had in the past in getting E. G. Gasperson to pay his ½ of the mortgage payments on their Caddo Ranch property and in getting him to pay on the Fort Worth National Bank note that is involved here.

The trial court's findings and conclusions are in substance that Alfred A. Drummond and his son purchased the LeMay property that is in controversy. E. G. Gasperson had gotten a 90 day option on October 16, 1961, to purchase a ½ interest therein but never exercised that option. Other than the option rights, E. G. Gasperson owned no interest in the LeMay property. We have held that the evidence is sufficient to support the trial judge's findings in this regard.

Under these circumstances the Gasperson point 21 becomes wholly immaterial.

This it true because if the sale of the LeMay property was to the Drummonds and if there was no agreement between A. A. Drummond and E. G. Gasperson that E. G. Gasperson was to have any part of such property other than a 90 day option to buy a ½ interest in such property, then the Texas Trust Act, the Statute of Frauds and Statute of Conveyances would not even enter into the picture under such circumstances. It would not make any difference in the result in this case whether the trial judge was right or wrong in holding as he did relative to such statutes. The Drummonds got the title and ownership of the LeMay property in the deal where they bought and paid for it and gave E. G. Gasperson a 90 day option, which was never exercised, to buy a ½ interest in such property.

The Gasperson points 19, 20 and 21 are overruled.

■ The Gasperson 22nd and 23rd points claim error of the trial judge in delaying for more than a year after he had heard the evidence before he rendered judgment in the case.

An examination of the record in the case does not reveal to us that the trial judge committed reversible error because of the delay.

The evidence conflicted on most of the controlling issues in the case and under such circumstances the trial judge was authorized to find as he did on such issues.

Points 22 and 23 are overruled.

Gasperson point 24 claims error of the trial judge in refusing to award judgment-over in favor of E. G. Gasperson against Alfred A. Drummond for the attorney fees and all interest accruing on the note in question after August 6, 1965, that is included in the judgment granted Madill National Bank, or in the alternative, judgment-over for at least the attorney fees and interest in excess of 6% per annum awarded the bank after August 6, 1965.

The contention is that the court's additional findings Nos. 1 to 11 entitle E. G. Gasperson to this relief.

The judgment in question awarded the Madill National Bank a recovery against E. G. Gasperson for the amount due on the principal of the note plus 10% interest and 10% attorney fees.

E. G. Gasperson admits that the bank is entitled to the judgment against him for the amount of the note. But he says that if Drummond had performed the July 23, 1965, compromise settlement agreement that the bank note would have been paid off on or before August 6, 1965, and the interest that has since accrued on that note and attorney fees would have been avoided. He contends that this additional interest on the note and the liability for attorney fees were thus incurred as a result of Alfred A. Drummond's breach of the settlement agreement and he should therefore be compelled to reimburse E. G. Gasperson for these items.

Gasperson's right to this relief hinged on the validity of the July 23, 1965, compromise settlement agreement. We have held that such agreement is unenforceable and therefore overrule this point 24.

Gasperson point 25 is that the trial court erred in rendering judgment in favor of the Madill National Bank granting foreclosure of chattel mortgage liens against livestock and other personal property.

The contention is that the undisputed evidence shows that some of the security described in the mortgage was sold with the bank's permission and the proceeds applied in part payment of the note. The judgment in this case was rendered 9 or 10 years after date of the chattel mortgage. A lot of the security was of a perishable nature. It is also contended that since the bank offered no proof of the location, description, existence or identity of the property that the decree of foreclosure is improper.

■ It appears to us that if the mortgaged property had ceased to exist at the time of the foreclosure decree that the foreclosure decree in question could not harm anyone. The odds are great that after 9 or 10 years the livestock listed in the mortgage are dead and that the personalty listed is worn out or non-existent.

■ In order to be entitled to a foreclosure of a lien the mortgagee does not have to prove at the trial the present location of such property. Many times the location of such property is hidden from him.

■ We also believe to be defensive matters the following: (1) the fact that the mortgage security has ceased to exist, and (2) the fact that certain items of the security have been released from the lien in question.

The burden of proof on these matters was on E. G. Gasperson and he cannot here contend successfully that the evidence was insufficient to make the record clear relative to the nonexistence of the security or that the proof is not clear as to just which ones of the livestock were sold and which ones were not.

■ The 30 head of cattle covered by the mortgage were described as being lo-

cated 4 east of Alvord on Gasperson Ranch. It stated that 53 head of such cattle were located on the Gasperson ranch 4 west of Boyd, Texas.

Descriptions such as this have been held to be sufficient. Ft. Worth Nat. Bank v. Red River Nat. Bank, 84 Tex. 369, 19 S.W. 517 (Tex.Sup., 1892); First National Bank of Wichita Falls v. First Bank of Chico, 155 Tex. 601, 290 S.W.2d 506 (Tex.Sup., 1956); Oak Cliff State Bank & Trust Co. v. Travis, 219 S.W. 286 (Dallas Tex.Civ.App., 1920, no writ hist.).

■ We are convinced that if it could be said that any error occurred in connection with the foreclosure part of the decree, that such error was surely harmless under the facts of this case. We overrule point 25.

■ Gasperson point 26 is that the trial court erred, under the facts of this case, in awarding Drummond a recovery of the $8,000.00 item plus interest from June 5, 1961. Five Thousand dollars ($5,000.00) of this item was a recovery for that sum gotten by Drummond for E. G. Gasperson from the Fort Worth National Bank in exchange for a $5,000.00 note made payable to such bank and executed by Drummond.

Gasperson says the judgment in question makes him pay the $5,000.00, and with the bank not being a party to the suit, such bank is left free to sue him on their note and collect this same $5,000.00 item again. In making this contention Gasperson claims that the evidence here shows that he, too, executed this note owned by the bank and is thus liable on it.

The material facts on this will be set out below.

In early June, 1961, E. G. Gasperson needed to borrow $10,000.00. He approached Alfred A. Drummond for help in this matter and Drummond arranged a $5,000.00 loan for his benefit at the Madill National Bank and another $5,000.00 loan at the Fort Worth National Bank. To help get the loan Adrian Gasperson had executed the note at the Oklahoma bank and Drummond had endorsed it and prior to this trial Drummond had acquired the ownership of such note from the bank.

The Fort Worth National Bank $5,000.00 note is still owned by the Bank, the entire principal is still owed and is past due, and that Bank is not a party to this suit.

Gasperson testified that his recollection is that he signed the Fort Worth Bank note along with Drummond. Drummond testified that his recollection is that he alone signed that note and that Gasperson did not sign it, and that even if he did sign the original note, Drummond has since executed a renewal of that note.

This presents a conflict in the evidence as to whether or not E. G. Gasperson signed the Fort Worth National Bank note.

On page 2, paragraph 2, of the judgment in this suit the trial court said: "That one loan was obtained by Alfred A. Drummond in the amount of $5,000.00 from the Fort Worth National Bank of Fort Worth, Texas, and on the note evidencing same E. G. Gasperson may have been a co-maker or a surety."

This is the trial court's only finding relative to whether or not Gasperson also signed this Fort Worth Bank note.

We sustain Gasperson point 26. These facts expose Gasperson to possible double liability for this same $5,000.00 item. This judgment lets Drummond recover for that item. The Bank is not bound by this judgment because it is not a party to the suit. It can sue and collect the same item from E. G. Gasperson at any time it sees fit, if he signed such note.

It is true that the judgment decrees that on being paid this item by Gasperson, Drummond is then ordered to pay any balance then remaining due on the $5,000.00 note of the Fort Worth National Bank that is in question.

The litigant is entitled to more protection than this affords. There would be nothing to prevent Drummond from leaving the country. He could go broke and be unable to pay or he could decide not to pay the item. In either such event Gasperson would be open to another judgment in favor of the Bank on this same item.

Gasperson point 28 says the court erred in rendering judgment for the $8,000.00 item plus 8% interest from June 5, 1961, on the loan transaction covered by the June 5, 1961 memo agreement between Alfred A. Drummond and E. G. Gasperson because the undisputed evidence and Drummond's own admissions show that he exercised his option to buy ½ interest in the minerals covered by the memo for a price in excess of the judgment award and this resulted in E. G. Gasperson's liability under the memo agreement being discharged by such purchase.

We have carefully examined the statement of facts and conclude that the evidence is sufficient to support the trial judge's finding (22) that Drummond did not exercise the option to buy such royalty interests and royalty acres. We therefore overrule Gasperson point No. 28.

Gasperson point 29 attacks that portion of the judgment decreeing that under certain conditions Alfred A. Drummond will become the absolute owner of all revenues from the oil and gas interests described in the memo agreement of June 5, 1961, that are on deposit in Case No. 9307, styled E. G. Gasperson et al. v. Christie, Mitchell and Mitchell et al., without giving E. G. Gasperson credit on his debt for such sums.

On June 2, 1961, E. G. Gasperson executed a conveyance to Alfred A. Drummond deeding to him four overriding royalty interests and 20 royalty acres. This was Gasperson Exhibit 44. The revenues mentioned were produced by these mineral interests.

On June 5, 1961, E. G. Gasperson and Alfred A. Drummond executed a memo agreement (Gasperson Exhibit 45) that showed that although the conveyance just referred to appeared to be an outright conveyance, actually the mineral interests were conveyed to Drummond as security for the two $5,000.00 loans that Drummond got for Gasperson that have been referred to under point 26 above.

The judgment rendered herein provides for a recovery by Drummond of the balance due on the principal of such loans plus interest.

The judgment provides that if Gasperson pays this part of the judgment within 30 days then the revenues from the mineral properties that were security for the repayment of such loan that have been paid into the registry of the court in Case No. 9307 was to be paid to E. G. Gasperson free of any claims by Alfred A. Drummond.

Then appeared in the judgment the provision complained of which reads as follows:

"In the event, however, that E. G. Gasperson shall fail within thirty (30) days from date of entry of this judgment to pay the aforesaid sum to Alfred A. Drummond, the money deposited in the registry of this Court in the aforesaid case attributable to such described mineral interests shall be and is hereby ordered to be the property of Alfred A. Drummond, free and clear of all claims asserted by E. G. Gasperson, Adrian Gasperson, James E. 'Jim' Gasperson, or J. L. R. 'Bob' Gasperson."

The judgment did not in any way provide that such sums when given to Drummond should be applied as a credit on Gasperson's debt to Drummond.

The judgment then decreed a foreclosure of Drummond's lien against these mineral interests described in Gasperson Exhibits 44 and 45 and directed that the moneys realized by a sale of such interests be

applied in payment of the E. G. Gasperson debt to Drummond arising out of the $10,000.00 borrowed for him by Drummond.

We sustain Gasperson point 29. Since the mineral interests that were described in Gasperson Exhibits 44 and 45 were only conveyed to Drummond as security, the real ownership of such properties remained in Gasperson. There was no agreement between these parties that the revenues from such mineral interests would belong to Drummond. Since these mineral interests were E. G. Gasperson's, so also did the revenues from such properties belong to him, including those on deposit in the Case No. 9307.

The trial court erred when he did not direct in his judgment that E. G. Gasperson be given credit on the amount of Drummond's judgment against him for those revenues.

■■■ Gasperson point 30 claims error by the trial court in rendering judgment against E. G. Gasperson for $12,330.68 plus interest at 8% from March 11, 1968, on the loan transaction of June 5, 1961, claiming that such judgment allows a recovery of compound interest and is also contrary to conclusion of law No. 1 and contrary to prior recitations in the judgment.

In connection with these two $5,000.00 loans that Alfred A. Drummond got for E. G. Gasperson the trial court rendered the following decree:

Paragraph 11—"It is further ORDERED, ADJUDGED and DECREED that Alfred A. Drummond do have and recover of and from E. G. GASPERSON the sum of $12,330.68 plus interest from March 11, 1968, at the rate of 8% per annum."

The trial court's conclusion of law No. 1 was the basis for that part of the judgment and it read as follows:

"1. E. G. Gasperson is indebted to Alfred A. Drummond for the sum of $8,000 plus interest on said sum at the rate of eight per cent (8%) per annum from June 5, 1961, as a result of the unpaid loans obtained by Alfred A. Drummond on or about said date for E. G. Gasperson in the original principal total amount of $10,000."

Prior recitations in paragraph 2 of the judgment related to this item and it stated in substance that there was a balance of $8,000.00 remaining due and unpaid on these two $5,000.00 loans that Drummond got for E. G. Gasperson and that E. G. Gasperson is obligated to pay to Alfred A. Drummond this $8,000.00 principal plus interest thereon from June 5, 1961, at the rate of 8% per annum. The total of the $8,000.00 principal, plus 8% interest to March 11, 1968, equalled $12,330.68.

We sustain Gasperson point 30. Under the recitations made in the judgment and in conclusion of law No. 1, the judgment should have decreed a recovery of the $8,000.00 principal together with interest thereon from June 5, 1961, until paid.

We realize that the law on this point is not altogether clear. We believe, however, that the point is controlled by the holdings in McDaniel v. Miller, 317 S.W.2d 546 (Waco Tex.Civ.App., 1958, no writ hist.), and Socony Mobil Oil Company v. Brooklyn Union Gas Company, 299 F.2d 692 (Fifth Cir., 1962).

The latter case holds in substance that where the judgment allows a recovery for an amount that represents the amount in controversy plus the interest thereon to date of judgment and then provides that the entire amount bear interest from date of judgment that compound interest has been allowed to some extent. The court then holds that such recovery is not proper under Texas law.

In the McDaniel case, $523.50 was owing to plaintiff as of January 15, 1954. The trial court then found that plaintiff was entitled to interest on such amount to March 25, 1958, in the amount of $129.88.

He then awarded judgment for $653.38 (the total of principal and interest) and then provided for a recovery of interest on this $653.88 figure from date of judgment at the rate of 6% per annum.

The Court of Civil Appeals in the McDaniel case said: "We think that the awarding of interest of six per cent per annum on the time of interest of $129.88 is fundamental error apparent on the record, * * *"

█ Their 33rd point is that the court erred in rendering judgment for Drummond against E. G. Gasperson for the full rental value of the LeMay farm from January 1, 1967, because the undisputed evidence shows that E. G. Gasperson did not have exclusive possession of the premises but shared them with Drummond.

The trial court found in substance that LeMay moved from the LeMay farm about December 31, 1966, and that E. G. Gasperson shortly thereafter took possession, put horses on it and locked the gates leading into the property without the knowledge or consent of Alfred A. Drummond; E. G. Gasperson has paid nothing to Drummond for the use of this property belonging to Drummond and that a reasonable rental value of this tract for the period from January 1, 1967, to trial time was $1,376.00.

The nature of the claimed joint possession of Drummond during this period is shown by the evidence to be a few isolated and unsuccessful attempts on the part of Drummond to try to get E. G. Gasperson, whom the trial court found to be a trespasser, off his property. The trial judge had this evidence before him when he was passing on the rental value. We overrule this point, believing that no error is shown in that regard.

Gasperson points 34 and 35 claim that the overwhelming weight and preponderance of the evidence is contrary to the court's findings as to the reasonable rental value of the LeMay and Pickens tracts.

As previously stated we have examined the entire record in this case. There is ample evidence in support of the findings of the court complained of in points 34, 35 and 36 and they are accordingly overruled.

Gasperson point 37 contends that the trial court erred in rendering a joint and several judgment in favor of Alfred A. Drummond and against E. G. and Jim Gasperson for $2,525.00 representing the reasonable rental value of the Pickens farm from January 1, 1962, until the date of judgment.

We overrule this point in so far as E. G. Gasperson is concerned. The recitation of fact found by the court in paragraph 6 of his judgment is in substance that E. G. Gasperson has been in possession of the Pickens farm from January 1, 1962, to time of the trial. We think the evidence in the record sufficient to support this finding and that the remainder of the court's findings and conclusions were sufficient to support the court's judgment for the $2,525.00 rent on the Pickens tract as against E. G. Gasperson.

█ However, we sustain Gasperson's point 37 in so far as James E. (Jim) Gasperson is concerned. The evidence in this case does not show when Jim Gasperson started exercising any possessory rights over such tract.

The trial judge's finding of fact No. 33 was in substance that "At some point in time" Jim Gasperson started occupying the Pickens farm.

Paragraph 6 of the judgment says in substance: That E. G. Gasperson and/or James E. (Jim) Gasperson have been in possession of the Pickens farm from January 1, 1962, to time of trial.

This recitation just referred to from paragraph 6 is correct in that the evidence shows that either E. G. Gasperson or Jim Gasperson has been in possession of the Pickens farm since January 1, 1962.

But such findings are not sufficient to support the court's judgment against Jim Gasperson for rentals over the entire period from January 1, 1962, to date of trial. They do not establish the date when Jim Gasperson started exercising possessory rights in such farm.

The evidence is completely lacking to show that Jim Gasperson had possession of any sort in this farm during the years 1962 and 1963. The part of the judgment making Jim Gasperson liable for rents for that period is therefore erroneous.

■ Gasperson points 38, 39 and 40 complain of the judgment decreeing a $186.00 recovery in favor of Alfred A. Drummond and against E. G. Gasperson for ½ the Dollie Yale—Belle Wortman abstract.

In the 38th point it is urged that this recovery was erroneous because it was barred by the 2 year statute of limitations.

The Gasperson brief on these points states that Drummond first made a claim in court for this item against E. G. Gasperson in his counterclaim that he filed on February 19, 1968. Drummond's brief does not in any way attempt to dispute this statement.

The Gaspersons in their first trial amendment pleaded that this claim was barred by both the 2 and 4 year Statute of Limitations.

The only part of the Drummond counterclaim that we believe could in any way present a claim for this abstract item is paragraph 10 thereof and it states that the obligation owed by E. G. Gasperson to A. A. Drummond in connection with the Dollie Yale and Belle Wortman deal has been owed to Drummond since May 21, 1959.

This was an oral transaction and in our opinion the statute of limitations has barred Drummond's claim for this $186.00 item. We therefore hold that the trial court erred in awarding Drummond a recovery for this $186.00 abstract item.

■ Gasperson point 41 is that the trial court erred in placing the following provision in the judgment: Paragraph 3: " * * * E. G. Gasperson is ordered and directed to execute and deliver a proper correction deed to said minerals to Alfred A. Drummond upon presentation of a proper correction deed by Alfred A. Drummond."

Other recitations in the judgment make it clear that this provision is referring to 20 mineral acres under the LeMay farm purchased by Drummond from one Percy Jones.

The complaint is that this decree is too vague and indefinite to enable one to comply with it in that it does not define what a proper correction deed is.

We sustain this point. The decree furnishes no yardstick to enable Gasperson or anyone else to tell by its own terms when he had complied with the decree in order to keep from getting in contempt of court.

This matter is harmless because later in the decree the judgment awards Alfred A. Drummond a recovery from E. G. Gasperson of the title to this particular mineral interest and once he had such a decree, he no longer needs a correction deed. The error, therefore, becomes harmless and can be taken care of by this court by reforming the trial court judgment by deleting therefrom the last sentence of paragraph 3 thereof, which is the sentence here complained of.

■ Gasperson points 42 and 43 claim error of the trial court in granting injunctions permanently enjoining the Gaspersons from any future entries on the LeMay or Pickens farms or minerals. They claim there is no pleading supporting such broad relief and that under the undisputed evidence Drummond was not entitled to such broad injunctive relief.

The decree provided: "It is further * * * DECREED that (the Gaspersons) and each of them, both in person or by and through their servants, agents or employees, be and they are hereby permanently enjoined from any future entries or trespasses or possessions in, on or to such above described LeMay farm, or tract, or minerals, or property."

The decree contained the same provision relative to the Pickens farm and followed such decree with the following provision: "This judgment as to the * * * Pickens land or tract is without prejudice to any right or rights E. G. Gasperson may or might have under certain option agreement entered into with R. E. Roberts."

The Gaspersons say these injunctive provisions violate Rule 683, Texas Rules of Civil Procedure.

The decree complained of is not in violation of that rule because such rule only applies to ancillary injunctive relief and not to final judgments. Alexander Schroeder Lumber Co. v. Corona, 288 S.W.2d 829 (Galveston Tex.Civ.App., 1956, ref., n. r. e.).

We find and hold that the pleadings and evidence are sufficient to justify injunctive relief as granted in this case.

These points are overruled.

■ Gasperson points 44, 45 and 46 complain of the refusal of the trial court to award him a recovery against Drummond for a commission for selling the latter's cattle at Idabelle, Oklahoma, in 1959. Point 48 based upon the same grounds attacks the court's failure to award a commission for selling cattle for Drummond in 1955 and 1956 to the Anderson Cattle Company. A recovery for this last commission was first sought in a pleading filed in February, 1968.

We have now reached that portion of the briefs in this case where the parties have ceased to cite any law in support of their contentions.

The trial court held that the claims for the above commissions were barred by limitations. We agree with this holding and overrule points 44, 45, 46 and 48.

■ By point 47 Gasperson insists that the court erred in decreeing in paragraph 17 of the judgment that he was only entitled to 6% interest from March 11, 1968 (date of judgment) on the $2,834.69 recovery against Alfred A. Drummond.

The recovery was based upon a letter agreement (Gasperson Exhibit 14) by which Drummond agreed to pay Gasperson ½ of his net income from certain oil properties therein described during the 18 month period from September 18, 1962 to March 18, 1964. These revenues were to be paid Gasperson monthly as they were earned by Drummond. They have not been paid.

We find and hold that Gasperson was entitled to have interest at the rate of 6% per annum on each monthly installment of such revenues and that interest accrued on each such installment at the end of the month on which Drummond was obligated to pay such revenues to Gasperson.

Drummond's accounting Exhibits 71–74, both inclusive, reflect the revenues by the month which accrued and are subject to the letter agreement.

We have carefully checked these exhibits and will reform that portion of the judgment providing recovery of $2,834.69 plus interest from date of judgment by deleting therefrom the provision relating to interest and provide that the following amounts which constitute the sum of $2,834.69 will each bear interest from the dates indicated at 6% until paid: $68.59— October 1, 1962; $82.67—November 1, 1962; $88.69—December 1, 1962; $104.33— January 1, 1963; $118.61—February 1, 1963; $210.71—March 1, 1963; $189.33— April 1, 1963; $68.65—May 1, 1963; $236.- 04—June 1, 1963; $196.44—July 1, 1963; $85.22—August 1, 1963; $76.60—September 1, 1963; $87.49—October 1, 1963; $86.-

72—November 1, 1963; $80.12—December 1, 1963; $90.74—January 1, 1964; $751.56 —February 1, 1964; $151.33—March 1, 1964; $60.79—April 1, 1964.

■ Gasperson point 49 contends that the trial court abused its discretion and erred in taxing two-thirds of the costs in this case against Jim Gasperson, jointly and severally, with his father, E. G. Gasperson.

We sustain this point. This month long trial was mainly consumed in trying to litigate the many pronged controversy between E. G. Gasperson and A. A. Drummond. A reading of this record would lead one to believe that Jim Gasperson was a victim of circumstances and was drawn into this controversy largely through the fault of others. His litigation here was very minor compared to that of the two main litigants.

The record clearly shows that Jim Gasperson did not have sufficient interest in this overall controversy to warrant the taxing of ⅔ of the costs against him. The fact that ⅔ of the costs were taxed against him, jointly and severally, with two other men does not do away with the vice therein, because under such a decree the entire ⅔ of the costs could be collected from Jim Gasperson.

The only part of the entire controversy that he was engaged in was the effort to compel Drummond to convey the Pickens farm to him and Drummond's cross-action for damages against him for trespassing on that farm.

We believe that justice requires that the part of the judgment relating to taxing costs in the trial court be reformed to provide that such trial court costs be taxed ⅓ against Alfred A. Drummond, ⁷⁄₁₂ against E. G. Gasperson and Adrian Gasperson, and ¹⁄₁₂ of such costs against James E. (Jim) Gasperson.

■ Drummond's cross-point No. 1 contends error in awarding E. G. Gasperson a ½ interest in overriding royalty in-terests reserved in three oil and gas leases assigned by Alfred A. Drummond to Christie, Mitchell and Mitchell.

The claim is made that there is no evidence to support this part of the judgment. E. G. Gasperson testified that at the time he made and delivered the oil and gas leases in question to Alfred A. Drummond they made an agreement that the two of them would be equal owners of whatever override Drummond was able to get out of the transaction with Christie, Mitchell and Mitchell. We overrule this contention.

We believe that the recitations in paragraph 8 of the judgment are sufficient to show a finding by the court of some element of this particular claim, so as to make applicable the provisions of Rule 299, T.R. C.P., supplying omitted findings by presumption in favor of the decree in question.

Drummond says the two and four year statutes of limitation bar a recovery by Gasperson of this item, but he refers us to no cases whatever indicating that he is right about his contention.

■ Since Drummond did not request any findings of fact on the defense of limitation and since none were made by the trial court, Drummond waived this defense of limitation as to this item. McKenzie v. Carte, 385 S.W.2d 520 (Corpus Christi Tex. Civ.App., 1964, ref., n. r. e.).

■ It is our opinion that the granting of the leases in question to Drummond under the oral agreement as testified to by Gasperson as above set out gave rise to the creation of a constructive trust in favor of Gasperson for ½ the override that Drummond was later able to get out of Christie, Mitchell and Mitchell in their deal that was contemplated by these parties.

We do not believe Articles 1288, 3995, 3995a, 7425b–1 and 7425b–7, V.A.C.S., prevent a recovery of this item.

We overrule Drummond's cross-point No. 1.

Drummond's cross-point No. 2 claims error in awarding E. G. Gasperson a ½ interest in the minerals under the Turner tract.

We hold there is evidence in the record supporting this decree. E. G. Gasperson furnished it.

We think the recitations in paragraph 7 of the judgment are sufficient to show a finding by the court of some element of this particular claim, so as to make applicable the provisions of Rule 299, T.R.C.P., supplying omitted findings of elements of this claim by presumption in favor of the judgment.

The defense of limitation as to this item was also waived because Drummond requested no findings of fact on it and the trial court made no such findings. McKenzie v. Carte, supra.

The record shows that E. G. Gasperson, his wife, Inez, and A. A. Drummond were the grantors in the deed that reserved to A. A. Drummond the title to 15 mineral acres under this Turner tract.

Gasperson alleged that it was by agreement of him and Drummond that this was done and that under such agreement the ownership of ½ of such reserved mineral interest was to be in E. G. Gasperson.

Under this set of facts we do not believe that Gasperson is barred from recovering this property.

Drummond's second point is overruled.

Involved in this overall controversy was the claim of Alfred A. Drummond against E. G. Gasperson for the claimed balance of $8,000.00 principal remaining unpaid on the $5,000.00 loan procured from the Madill National Bank and the $5,000.00 loan procured from the Fort Worth National Bank, both of which loans were referred to and were the subject matter of the memo agreement between the parties dated June 5, 1961, same being Gasperson Exhibit 45. The part of the controversy just referred to is further identified as that claim made by Drummond that is pleaded in paragraph No. 1 of the Drummond counterclaim filed in this case on February 19, 1968. It is further hereby identified as being the claim that is also referred to and pleaded in paragraph 1 of the Alfred A. and James A. Drummond "Trial Amendment to Counterclaim" that they filed in this case on March 11, 1968.

It is ordered that the part of this overall controversy that is referred to in the preceding paragraph of this opinion be and the same is hereby severed from the rest of this case.

It is further ordered that all of the part of the judgment appearing in paragraphs 2 and 11 of the judgment signed by the trial court on August 15, 1969, the same being the part of the decree that relates to the part of the overall case that has just been severed from the rest of this case, be and the same is hereby reversed and such severed part of this case is hereby remanded to the trial court for a new trial.

Upon a rehearing of that phase of the case the matters complained of in Gasperson points 29 and 30 that are discussed in this opinion will probably not recur. They can be taken care of on the retrial of this severed feature of this case, because they both relate to it.

Another part of this overall controversy is the part of it wherein Alfred A. Drummond seeks to recover from James E. (Jim) Gasperson rentals on the Pickens farm from January 1, 1962, to date of trial.

That part of this consolidated case just described is hereby severed from the rest of the case and the part of the judgment relating to this feature of the case, which appears in paragraph 16 thereof, and which awards Alfred A. Drummond judgment against James A. (Jim) Gasperson for $2,525.00 is hereby reversed and remanded to the trial court for a new trial.

That part of the trial court's judgment appearing in paragraph 15 thereof awarding Alfred A. Drummond a judgment

against E. G. Gasperson for $186.00 for ½ the Dollie Yale—Belle Wortman abstract cost is hereby reversed and rendered in favor of Gasperson, that Drummond take nothing for that item.

In that connection it is ordered that paragraph 15 of such decree be reformed to where the overall recovery provided for in such paragraph shall be $1,376.00 instead of the $1,562.00 therein provided for which included the $186.00 abstract item.

The last sentence of paragraph 3 of the trial court's decree reads as follows: "E. G. Gasperson is ordered and directed to execute and deliver a proper correction deed to said minerals to Alfred A. Drummond upon presentation of a proper correction deed by Alfred A. Drummond."

The trial court's judgment is hereby reformed by completely deleting therefrom the last sentence of paragraph 3 thereof, such sentence appearing in the next preceding paragraph of this opinion.

Paragraph 17 of the trial court judgment provides that the E. G. Gasperson recovery of $2,834.69 against Alfred A. Drummond, which is therein provided for, bear interest at 6% from the date of judgment.

Paragraph 17 of the trial court's judgment is reformed by deleting therefrom the provision "together with interest on such sum at the rate of six per cent (6%) per annum from date of judgment." Such decree is reformed further by decreeing that the various installments that went to make up the $2,834.69 recovery provided for in that paragraph shall bear interest in the manner and from the dates spelled out above in the part of this opinion that is devoted to a discussion of Gasperson point 47.

Paragraph 21 of the trial court's judgment is hereby reformed to where it shall read as follows: "Costs of court are adjudged ⁷⁄₁₂ against E. G. and Adrian Gasperson, ¹⁄₁₂ against James E. (Jim) Gasperson, and ⅓ against Alfred A. Drummond."

All of the rest of the trial court's judgment that has not been reversed and remanded, reversed and rendered, or reformed in the respects hereinabove indicated, is hereby affirmed.

The judgment is thus affirmed in part, reformed in part, reversed and rendered in part, and reversed and remanded in part for trial in compliance with the instructions contained in this opinion.

The costs of this appeal are taxed ½ against E. G. Gasperson and ½ against Alfred A. Drummond.